# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA-AMERICAN WATER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); E.I. DUPONT DE NEMOURS AND COMPANY; DUPONT DE NEMOURS, INC. (F/K/A DOWDUPONT, INC.); CORTEVA, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DYNEON LLC; KIDDE-FENWAL, INC.; ANGUS FIRE; THE ANSUL COMPANY; TYCO FIRE PRODUCTS LP; CHEMGUARD, INC.; NATIONAL FOAM, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; BUCKEYE FIRE PROTECTION COMPANY; RAYTHEON TECHNOLOGIES CORPORATION; KIDDE PLC INC.; KIDDE FIRE FIGHTING, INC.; CARRIER GLOBAL CORPORATION; ANGUS FIRE ARMOUR CORPORATION; CHUBB FIRE, LTD.; UNITED TECHNOLOGIES CORPORATION; CIBA, INC.; DYNAX CORP.; CLARIANT CORP.; ARCHROMA MANAGEMENT LLC; ARKEMA INC.; CHEMDESIGN PRODUCTS, INC.; AMEREX CORPORATION; AGC CHEMICALS AMERICAS INC.; CHEMICALS INC.; DEEPWATER CHEMICALS, INC.; NATION FORD CHEMICAL COMPANY; AAA EMERGENCY SUPPLY CO., INC.; WILLIAMS FIRE & HAZARD CONTROL, INC.; E-ONE, INC. (f/k/a Emergency One, Inc.); JOHN DOE DEFENDANTS 1-50,<br><br>Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED**<br><br>*Removed from the Court of Common Pleas for Cumberland County, Pennsylvania*<br>*Case No. 2020-03171* |

Defendants Tyco Fire Products, LP ("Tyco") and Chemguard, Inc. ("Chemguard"), by and through undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Court of Common Pleas of Cumberland County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania.  As grounds for removal, Tyco and Chemguard state as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff seeks to hold Tyco, Chemguard, and certain other Defendants liable based in part on their alleged conduct in designing, manufacturing, and selling firefighting chemical agents, aqueous film-forming foam ("AFFF"), which were developed for sale to the United States military and others in accordance with the military's rigorous specifications ("MilSpec AFFF"). According to Plaintiff's Complaint, potential sources of the AFFF that has allegedly caused Plaintiff's injuries include "airports" and "military facilities," many (if not all) of which are required by law to stock and use MilSpec AFFF.  Accordingly, Tyco and Chemguard intend to assert the federal "government contractor" defense in response to Plaintiff's claims.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco and Chemguard are entitled to remove this action in order to have their federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

2.      The Complaint in this action was filed on October 21, 2020, in the Court of Common Pleas of Cumberland County, Pennsylvania, bearing Case No. 2020-03171. (Ex. A, Complaint).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(b) and 1441(a) because

2

the Court of Common Pleas of Cumberland County, Pennsylvania, is located within the Middle District of Pennsylvania.

3. Tyco and Chemguard have not yet been served with the Complaint, and there have been no further proceedings in this action in the Court of Common Pleas of Cumberland County, Pennsylvania.

4. Tyco and Chemguard are not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*, No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

5. Plaintiff alleges that it owns and operates 67 public water supply systems located in the Commonwealth of Pennsylvania that are supplied by over 100 active groundwater wells. (Compl. ¶¶ 1, 7-8.) Plaintiff generally alleges that Defendants (including Tyco and Chemguard) have manufactured, marketed, and/or sold products, including AFFF products, containing per- and polyfluoroalkyl substances ("PFAS"), including for example perfluorooctane sulfonate ("PFOS"), perfluorooctanoic acid ("PFOA"), and/or compounds that degrade into those chemicals, which products were used or discharged at various sites throughout the Commonwealth of Pennsylvania, including airports and military facilities. (Compl. ¶¶ 1, 3). Plaintiff further alleges that these chemicals have contaminated its drinking water supply and the ground and surface waters that serve as sources for its drinking water supply. (*Id.* ¶ 1).

6. Plaintiff asserts claims for strict liability (*id.* ¶¶ 88–93), strict liability – failure to warn (*id.* ¶¶ 94–100), strict liability – design defect (*id.* ¶¶ 101–1009), negligence (*id.* ¶¶ 110–116), private nuisance (*id.* ¶¶ 117–121), public nuisance (*id.* ¶¶ 122–127), and violations of the

Pennsylvania Uniform Fraudulent Transfer Act (*id.* ¶¶ 128–138).  Plaintiff seeks compensatory damages for the costs of removing PFAS and investigating PFAS discharges. (*Id.*, p. 27.)

7. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court of Common Pleas of Cumberland County, Pennsylvania.

8. By filing a Notice of Removal in this matter, Tyco and Chemguard do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco and Chemguard specifically reserve the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

9. Tyco and Chemguard reserve the right to amend or supplement this Notice of Removal.

10. If any question arises as to the propriety of the removal of this action, Tyco and Chemguard request the opportunity to present a brief and oral argument in support of removal.

**REMOVAL IS PROPER UNDER THE FEDERAL
OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)**

11. Removal here is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"  *Durham*, 445 F.3d at 1251; *see also Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135.

12. Removal rights under the federal officer removal statute, 28 U.S.C. § 1442, are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (alterations in original) (internal quotation marks omitted).

13. All requirements for removal under § 1442(a)(1) are satisfied here. *See*, *e.g.*, *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in case against Tyco, Chemguard, and other manufacturers of AFFF). In fact, in cases quite similar to this one, the judge overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has found several times that removal under § 1442 was proper. *See* Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF. No. 103 (D.S.C. May 24, 2019) ("MDL Order 1") at 3–6 (removal requirements satisfied because Tyco demonstrated that it manufactured AFFF under the guidance of the U.S. military); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF. No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2") at 3–5 (removal requirements satisfied

where plaintiff's claims based in part on AFFF use at Part 139 airport); Order, *In re Aqueous Film-Forming Foams Products Liability Litigation*, MDL No. 2:18-mn-2873-RMG, ECF. No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3") at 3–6 (same). Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, is properly removed to federal court.[1]

**A.    MilSpec AFFF**

14.    Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF with assistance from industry participants, and its researchers were granted the first AFFF patent in 1966.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

15.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are

---

[1] Following removal, Tyco and Chemguard intend to designate this action for transfer to the MDL.

[2] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001--06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), http://bit.ly/2mujJds.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16.     From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."  All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."  PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

17.     So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.  *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part 139 airports to use MilSpec

---

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.* at 1.

AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[7]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[8]  The FAA explained:

> There are several reasons for this requirement.  First of all, AFFF has to be compatible when mixed.  AFFF manufactured by different manufacturers, although meeting the UL 162 standard, may not be compatible.  AFFF meeting the Military Specification will always be compatible with other Military Specification AFFF no matter the manufacturer.  Second, AFFF meeting the military specification requires less agent than AFFF meeting UL 162 to extinguish the same size fire.  Finally, the requirement to use Mil Spec is in concert with the National Fire Protection Association National Fire Code 403, paragraph 5.1.2.1.[9]

18.    On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July 1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.

19.    Plaintiff alleges that its water supply has been contaminated by PFAS, including PFOA and PFOS, and that this contamination stems in part from the use of Defendants' AFFF products at "*airports*, fire-fighting training centers, fire-fighting location, and *military facilities*

---

[7] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[8] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25–26 (Aug. 2014), https://tinyurl.com/rt35dgp.

[9] *Id.*

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

throughout the Commonwealth of Pennsylvania." (Compl. ¶¶ 1–3 (emphases added); *see also id.* ¶ 12.)

20. Upon information and belief, any AFFF used at "military facilities" throughout the Commonwealth was MilSpec AFFF.

21. Upon information and belief, one or more of the sixteen Part 139 airports located throughout the Commonwealth[11] are potential sources of the alleged PFAS contamination that gives rise to Plaintiff's claims. Upon information and belief, MilSpec AFFF has been used and released into the environment at these airports since at least 2006.

**B.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

### 1.     The "Person" Requirement Is Satisfied

22. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco (a limited partnership) and Chemguard (a corporation) are "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *see Bennett*, 607 F.3d at 1085 (concluding that a non-natural entity is a "person" for purposes of § 1442(a)(1)); *Isaacson*, 517 F.3d at 135–36 (same).

### 2.     The "Acting Under" Requirement Is Satisfied

23. The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Isaacson*, 517 F.3d at 137 (internal quotation marks omitted). "The words 'acting under' are to be interpreted broadly." *Id.* at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only

---

[11] *See* Part 139 Airport Certification Status List, *available at* https://www.faa.gov/airports/airport_safety/part139_cert/ (last visited 1/20/2021).

be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813.

24. The requirement is met here because Plaintiff's claims, at least in part, challenge Tyco's and Chemguard's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members) (internal quotation marks omitted); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12] Accordingly, the military has long depended upon outside contractors like Tyco and Chemguard to develop and supply AFFF. *See Ayo*, 2018 WL 4781145, at *8–9 (holding that Tyco, Chemguard, and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *see also* MDL Order 1 at 3–6 (finding that the "acting under" requirement was satisfied because Tyco demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2 at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3 at 3–6 (same). If Tyco, Chemguard, and other manufacturers did not provide MilSpec AFFF for use at military installations and Part 139 airports, the government would have to manufacture and provide the product itself.

---

[12] *Fulfilling the Roosevelts' Vision* at 37.

25.     In designing, manufacturing, and supplying the MilSpec AFFF products at issue, Tyco and Chemguard acted under the direction and control of one or more federal officers. Specifically, Tyco and Chemguard acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the United States Department of Defense.[13]

### 3.    The Causation Requirement Is Satisfied

26.     The third requirement, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement." *Isaacson*, 517 F.3d at 137 (alteration, citation, and internal quotation marks omitted).  Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.*  Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Id.*[14]

27.     "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137–38.  Here, the Plaintiff's claims arise in part from Tyco's and Chemguard's production and sale of AFFF manufactured to military specifications for use at military facilities and Part 139 airports throughout the Commonwealth.  Plaintiff alleges in part that the PFAS in this AFFF is the source of its injury.  Tyco and Chemguard contend that the use

---

[13] *See* Dep't of Defense, SD-6, at 1.

[14] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

of such chemicals in MilSpec AFFF was required by military specifications. The conflict is apparent: MilSpec AFFF was developed by Tyco, Chemguard, and other manufacturers to meet specifications established by the Department of Defense. Military installations and Part 139 airports are required to employ MilSpec AFFF. The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco and Chemguard could not comply with both the MilSpec and the purported state-prescribed duty of care. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 509 (1988); *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1 at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2 at 5 (finding the causation element of federal officer removal satisfied where Tyco/Chemguard's AFFF products, "for which the military imposes MilSpec standards," were used at several Part 139 airports); MDL Order 3 at 5–6 (same as to MilSpec AFFF used at a single airport).

### 4. The "Colorable Federal Defense" Requirement Is Satisfied

28. The fourth requirement ("colorable federal defense") is satisfied by Tyco's and Chemguard's assertion of the government contractor defense.

29. At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). "A 'defendant need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Bennett*, 607 F.3d at 1089 ("[A] colorable federal defense need only be plausible . . . [and] a district court is not required to determine its validity at

the time of removal.") (internal citation omitted); *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Crane Co.*, 771 F.3d at 116.[15]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Crane Co.*, 771 F.3d at 116 (alteration in original) (citation omitted); *see also Bennett*, 607 F.3d at 1090–91.

30.     Under the government contractor defense, the defendant is not liable for alleged defects or negligence with respect to military equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

31.     Tyco and Chemguard have satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco's and Chemguard's products appeared on the DOD Qualified Products List, which

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.") (internal citation omitted).

could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence … that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1 at 5 (finding Tyco demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2 at 4 (same, as to Tyco/Chemguard); MDL Order 3 at 5 (same, as to Tyco/Chemguard).

32.    Moreover, the government was adequately informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF can contain PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues.[16]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects

---

[16] *See, e.g.*, EPA, Revised Draft Hazard Assessment of Perfluorooctanoic Acid and its Salts, at 1–6 (Nov. 4, 2002) (excerpt).

environmentally."[17] More recently, in a November 2017 report to Congress, the Department of Defense acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1 at 5 ("As to whether Tyco adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, Tyco points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

33. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of

---

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), http://www.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[18] Dep't of Defense, Aqueous Film Forming Foam Report to Congress 1–2 (Oct. 2017) (pub. Nov. 3, 2017).

15

significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

WHEREFORE, Tyco and Chemguard hereby remove this action from the Court of Common Pleas of Cumberland County, Pennsylvania.

Dated: February 11, 2021

Respectfully submitted,

/s/ Mark A. Aronchick
Mark A. Aronchick
Jason A. Levine *(petition for admission forthcoming)*
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 496-7060
Facsimile: (215) 568-0300

*Counsel for Tyco Fire Products, LP & Chemguard, Inc.*

CERTIFICATION AND CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2021, the foregoing Notice of Removal was served by U.S. mail and electronic mail on the following:

| | |
|---|---|
| Elizabeth Rose Triscari<br>Pennsylvania-American Water Company 852 Wesley Drive<br>Mechanicsburg, PA 17055<br>Elizabeth.triscari@amwater.com<br><br>T. Roe Frazer II<br>Trey Frazer<br>FRAZER PLC<br>30 Burton Hills Boulevard, Suite 450 Nashville, Tennessee 37215<br>roe@frazer.law<br>trey@frazer.law<br><br>Christiaan A. Marcum<br>RICHARDSON, PATRICK, WESTBROOK, & BRICKMAN LLC 1037 Chuck Dawley Blvd., Bldg. A Mount Pleasant, SC 29464<br>cmarcum@rpwb.com<br>*Counsel for Pennsylvania-American Water Company* | E I DUPONT DE NEMOURS AND COMPANY<br>D13030<br>1007 Market Street<br>Wilmington, DE 19898<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>mrushton@shb.com<br>(By email only, per agreement with counsel) |
| DUPONT DE NEMOURS INC.<br>1999 Bryan Street, Suite 900<br>Dallas, TX 75201<br>dupont@bartlitbeck.com<br>(By email only, per agreement with counsel) | CORTEVA INC.<br>974 Centre Road<br>Chestnut Run Plaza<br>New Castle, DE 19805<br>dupont@bartlitbeck.com<br>(By email only, per agreement with counsel) |
| THE CHEMOURS COMPANY and THE CHEMOURS COMPANY FC LLC<br>400 E. Court Avenue<br>De Moines, IA 50309<br>derickson@shb.com<br>dbdwerlkotte@shb.com<br>mrushton@shb.com<br>(By email only, per agreement with counsel) | DYNEON LLC<br>3M Corporate Headquarters<br>St. Paul, MN 55144 |

| | |
|---|---|
| KIDDE FENWAL INC.<br>400 Main Street<br>Ashland, MA 01721<br>kbensten@daypitney.com<br>jihandler@daypitney.com<br>(By email only, per agreement with counsel) | THE ANSUL COMPANY<br>c/o CT Corp. Sys.<br>123 Broad Street<br>Philadelphia, PA 19109 |
| BUCKEYE FIRE EQUIPMENT CO. and BUCKEYE FIRE PROTECTION COMPANY<br>110 Kings Road<br>Kings Mountain, NC 28026<br>mcarpenter@gastonlegal.com<br>(By email only, per agreement with counsel) | NATIONAL FOAM INC.<br>150 Gordon Drive<br>Lionville, PA 19353<br>smithkei@gtlaw.com<br>(By email only, per agreement with counsel) |
| THE 3M COMPANY<br>3M Center<br>Building 224-5N4<br>St. Paul, MN 55144<br>srashid@mayerbrown.con<br>rbulger@mayerbrown.com<br>dring@mayerbrown.com<br>talfermann@mayerbrown.com<br>(By email only, per agreement with counsel) | ANGUS FIRE and ANGUS FIRE ARMOUR CORPORATION<br>141 Junny Road<br>Angier, NC 27501 |
| UNITED TECHNOLOGIES CORPORATION<br>10 Farm Springs Road<br>Farmington, CT 06032<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>(By email only, per agreement with counsel) | RAYTHEON TECHNOLOGIES CORPORATION<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>(By email only, per agreement with counsel) |
| KIDDE PLC INC.<br>One Carrier Place<br>Farmington, CT 06034 | KIDDE FIRE FIGHTING INC.<br>400 Main Street<br>Ashland, MA 01721<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>(By email only, per agreement with counsel) |
| CARRIER GLOBAL CORPORATION<br>13995 Pasteur Boulevard<br>Palm Beach Gardens, FL 33418<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>(By email only, per agreement with counsel) | CHUBB FIRE LTD<br>Littleton Road<br>Ashford, Middlesex TW15 1TZ<br>jihandler@daypitney.com<br>kbensten@daypitney.com<br>(By email only, per agreement with counsel) |

CIBA INC.
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801
matt.holian@us.dlapiper.com
john.wellschlager@dlapiper.com
(By email only, per agreement with counsel)

DYNAX CORP.
4000 Monroe Road
Charlotte, NC 28205
kwarner@smithlaw.com
cbrinson@smithlaw.com
aries@smithlaw.com
(By email only, per agreement with counsel)

ARKEMA INC.
900 1st Avenue
King of Prussia, PA 19496
meaton@sidley.com
(By email only, per agreement with counsel)

AMEREX CORPORATION
7595 Gadsden Highway
Trussville, AL 35173
nboos@maynardcooper.com
bday@maynardcooper.com
cporter@maynardcooper.com
mdunn@maynardcooper.com
mshabpareh@maynardcooper.com
nlau@maynardcooper.com
(By email only, per agreement with counsel)

CHEMICALS INC.
12321 Hatcherville Road
Baytown, TX 77521
jparker@goldbergsegalla.com
otwaddell@goldbergsegalla.com
(By email only, per agreement with counsel)

AAA EMERGENCY SUPPLY CO. INC.
635 North Broadway
White Plains, NY 10603

NATION FORD CHEMICAL COMPANY
2300 Banks Street

CLARIANT CORP.
4000 Monroe Road
Charlotte, NC 28295
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com
(By email only, per agreement with counsel)

ARCHROMA MANAGEMENT LLC
Neuhofstrasse 11
Reinach, 4153
charlesraynal@parkerpoe.com
melaniedubis@parkerpoe.com
(By email only, per agreement with counsel)

CHEMDESIGN PRODUCTS INC.
2 Stanton Street
Marinette, WI 54143
jblakley@grsm.com
(By email only, per agreement with counsel)

AGC CHEMICALS AMERICAS INC.
55 E. Uwchlan Avenue
Suite 201
Exton, PA 19341
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com
(By email only, per agreement with counsel)

DEEPWATER CHEMICALS INC.
196122 E. County Road 40
Woodward, OK 73801
kurt.weaver@wbd-us.com
(By email only, per agreement with counsel)

WILLIAMS FIRE & HAZARD CONTROL INC.
9605 Richard Wycoff
Port Arthur, TX 77640

E-ONE INC.
1601 SW 37th Avenue

| | |
|---|---|
| Fort Mill, SC 29715<br>eware@williamsmullen.com<br>(By email only, per agreement with counsel) | Oscala, FL 34474<br>aupshaw@mwe.com<br>jpardo@mwe.com<br>malvarez@mwe.com<br>(By email only, per agreement with counsel) |

                                       /s/ Mark A. Aronchick
                                       Mark A. Aronchick